1  Mark Clayton Choate, Esq., AK #8011070
   CHOATE LAW FIRM LLC
2  424 N. Franklin Street
   Juneau, Alaska 99801
3  Telephone: (907) 586-4490
   Facsimile: (888) 856-3894
4

**COPY**
Original Received

JAN 0 8 2014

Clerk of the Trial Courts
By_____ *np* _____Deputy

5  Attorneys for Plaintiff

6        **IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**

7           **FIRST JUDICIAL DISTRICT AT JUNEAU**

8  JAMES L. MILLER and APRIL MILLER,
   as assignees of TONKA TOY RENTALS,
9  LLC,

10           Plaintiff,

11  vs.

12  COLUMBIA INSURANCE COMPANY,          Case No. 1JU-14-461  CI

13           Defendant.



14

15        **COMPLAINT FOR INSURANCE BAD FAITH**

16                    **INTRODUCTION**

17     JAMES L. MILLER and APRIL MILLER, (hereinafter "MILLER") as assignees of

18  Tonka Toy Rentals, LLC, seek damages against COLUMBIA INSURANCE COMPANY for

    breach of insurance contract and bad faith breach of the covenant of good faith and fair dealing.
19
    They make these claims as TONKA TOY RENTALS, LLC's assignee pursuant to a Covenant
20
    Settlement Agreement dated December 26, 2013 and a Confession of Judgment After Action
21
    dated December 26, 2013 in the amount of $2,500,000.00. He received this assignment as part
22
    of a settlement of all claims he had against TONKA TOY RENTALS, LLC he suffered on July
23
    7, 2012 when a boom truck he was standing on suddenly tilted causing him to fall to ground
24
    and suffer catastrophic injuries.

25

26

27  COMPLAINT FOR INSURANCE BAD FAITH
    *Miller v. Columbia Insurance Company*
28  Page 1 of 9



SUIT RECORDED
REC MAN

JAN 2 1 2014

WTi

(907) 586-4490 Fax:(888) 856-3894
Juneau, Alaska 99801
424 North Franklin Street
**CHOATE LAW FIRM LLC**

Pursuant to that assignment and Confession of Judgment, MILLER through counsel, the CHOATE LAW FIRM LLC, hereby complains and alleges against COLUMBIA INSURANCE COMPANY, as follows:

## PARTIES AND JURISDICTION

1. Plaintiffs, JAMES L. MILLER and APRIL MILLER (hereinafter "MILLER") are husband and wife and residents of the First Judicial District, residing in Petersburg, Alaska.

2. Defendant COLUMBIA INSURANCE COMPANY (hereinafter "COLUMBIA") is a Nebraska corporation and transacts insurance in Alaska. This court has personal jurisdiction over COLUMBIA pursuant to 28 USC § 1332(c), AS 09.05.015((a)(1)(D) and AS 09.15.015(a)(10)(A)(B)(C).

3. MILLER brings this Complaint against COLUMBIA as the assignee of certain claims of TONKA TOY RENTALS, LLC (hereinafter "TONKA) against COLUMBIA for breach of contract and insurance bad faith. Those claims were assigned to him as part of a settlement of a personal injury action he brought against TONKA for injuries he suffered as a result of the negligence of a TONKA employee. TONKA had a commercial auto policy with COLUMBIA insuring the boom truck but COLUMBIA refused and failed to defend or provide indemnity.

4. Venue is proper in the First Judicial District at Juneau.

## BACKGROUND

5. TONKA is a limited liability company operating in Petersburg, Alaska. It provides a number of services involving the use of trucks including transporting fuel to the airport for Alaska Airlines and providing boom truck services, principally to the operators of fishing boats.

6. TONKA purchased a 1990 Ford truck with a boom to use in its commercial business.

7. The 1990 Ford truck was a "commercial vehicle" pursuant to AS § 28.90.990(a)(2). AS § 28.10.011 required that vehicle to be registered with the state Division of Motor Vehicles.

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 2 of 9

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax (888) 856-3894

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax(888) 856-3894

8.     AS § 28.22.011, a compulsory financial responsibility law, required the 1990 Ford truck to be insured under a motor vehicle liability policy that complied with the law.

9.     In compliance with Alaska's statutes, TONKA obtained a business auto insurance policy from COLUMBIA, Policy No. 71 APR 272587 to provide coverage for its business autos. (Exhibit 1)

10.     The policy period was from March 15, 2012 to March 15, 2013 and provided liability protection of $1,000,000 and auto medical payments of $5,000.

11.     The "Schedule of Covered Autos" that is part of the policy identified three commercial trucks for which insurance was provided:

     (1) 2006 Kenworth T300 (GVW 45,000 lbs)

     (2) 1990 Ford LT9000 (GVW 45,001 lbs)

     (3) 1994 GMC dump truck (GVW 45,001 lbs)

12.     TONKA used the 1990 Ford truck to move principally fishing related equipment from storage to the water and from the water to storage. This included seine skiffs, bait shacks, crab pots, and other large and bulky equipment. It accomplished this through a boom attached to the large flat bed on the back of the truck. The 1990 Ford truck used the highways and roads of Petersburg, Alaska in moving that equipment.

13.     On July 7, 2012, Michael Leonard was operating the 1990 Ford boom truck for TONKA.

14.     Michael Leonard failed to use due care in the operation of the boom truck causing it to suddenly tip. JAMES MILLER was standing on the back of the boom truck guiding the skiff with tag lines and was thrown or jumped from the truck in an effort to avoid being killed.

15.     The fall or jump from the truck onto the concrete dock resulted in catastrophic injuries to JAMES MILLER and loss of consortium to his wife, APRIL MILLER.

16.     COLUMBIA was immediately informed of the claim and hired Ferd Lasinski of the Alaska Adjustment Bureau to investigate.

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 3 of 9

17. Lasinski conducted an extensive investigation and reported to COLUMBIA that JAMES MILLER suffered very serious injuries as a result of operator error by Michael Leonard. (Exhibit 2)

18. After receiving that report, COLUMBIA denied a defense and coverage for the claim.

19. Subsequently, after suit was brought by JAMES MILLER and his wife APRIL MILLER, (for loss of consortium) in *Miller v. Tonka Toy Rentals, LLC,* Case No. 1JU-13-548 CI), (Exhibit 3) COLUMBIA continued to deny a defense and coverage for its insured TONKA

20. On December 26, 2013, TONKA through its manager/member, Charles Davis, signed a Covenant Settlement Agreement (Exhibit 4) and Confession of Judgment After Action. (Exhibit 5)

23. The Covenant Settlement Agreement and Confession of Judgment provided TONKA confess judgment to JAMES MILLER and APRIL MILLER in the amount of $2,500,000.00, plus prejudgment interest, costs and attorneys' fees and that $1,000,000 would be paid on or before December 31, 2013.

24. The $1,000,000 payment was received on January 7, 2014. MILLER brings this action to recover the additional $1,500,000 plus prejudgment interest, cost, attorneys' fees and punitive damages against COLUMBIA INSURANCE COMPANY.

## COUNT ONE

### Breach of Insurance Contract

25. Plaintiffs incorporate by reference the allegations contained within paragraphs 1-24, and further alleges as follows:

26. The insurance policy provided by COLUMBIA, Policy No. 71 APR 272 587, was a valid insurance contract that provided two separate and distinct protections for the insured. First, there was a duty to defend "if the complaint on its face alleges facts which standing alone, give rise to a possible finding of liability covered by the policy." *Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979). Second, there was a duty to indemnify and protect the insured from financial liability up to the limits of the policy where liability was reasonably certain and damages significant and easily ascertainable.

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 4 of 9

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax:(888) 856-3894

27.     COLUMBIA breached its contractual duty to defend TONKA by failing to defend him for the claims made in this matter by MILLER because the complaint on its face alleged facts, which standing alone, gave rise to a possible finding of liability covered by the policy.

28.     COLUMBIA breached its duty to indemnify TONKA by failing to provide the financial protection specifically identified by Policy No. 71 APR 272 587. More specifically, in a letter dated February 4, 2013, COLUMBIA denied coverage claiming that the 1990 Ford boom truck was excluded from coverage as "mobile equipment". "Mobile equipment" is defined at K.4 in pertinent part:

" Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a.  Power cranes, shovels, loaders, diggers or drills;" (Exhibit 6)

29.     In denying coverage for the stated reason, COLUMBIA ignored the policy language that specifically included coverage for vehicles subject to a compulsory financial responsibility law:

"However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos"."

30.     In choosing to deny coverage for a registered commercial vehicle specifically identified in the "Schedule of Covered Autos", COLUMBIA breached its insurance contract with TONKA.

31.     TONKA was damaged in the amount of the $2,500,000 Confession of Judgment it entered into plus prejudgment interest, fees and costs less the $1,000,000 paid.

## COUNT TWO

### Breach of the Covenant of Good Faith and Fair Dealing

32.     Plaintiffs incorporate by reference the allegations contained within paragraphs 1-31, and further alleges as follows:

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 5 of 9

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax:(888) 856-3894

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax:(888) 856-3894

33.     COLUMBIA had separate duties in tort to act in good faith and deal fairly with its insured, Tonka Toy Rentals LLC.

34.     Those duties included the duty to defend, which is broader than the duty to indemnify. *Sauer v. Home Indem. Co.,* 841 P.2d 176 (Alaska 1992).

35.     The factual events as set forth in Ferd Lasinski's investigation, standing alone, gave rise to a possible finding of liability covered by the policy.

36.     The Complaint in *Miller v. Tonka Toy Rentals, LLC,* Case No. 1JU-13-548 CI, (Exhibit 3) "... on its face alleges facts which standing alone, give rise to a possible finding of liability covered by the policy." *Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979)

37.     Notwithstanding its own investigation and the allegations in the Complaint, COLUMBIA failed and refused to defend Tonka Toy Rentals LLC against the claims made by MILLER. That failure was a breach of the covenant of good faith and fair dealing.

38.     COLUMBIA had a duty to indemnify its insured, Tonka Toy Rentals LLC, for claims made for bodily injury arising from the operation of the 1990 Ford truck. The policy makes it clear that the exceptions for "mobile equipment" do not apply to a vehicle that is subject to mandatory insurance laws, and such vehicles will be considered "autos" for purposes of coverage under the policy.

39.     Notwithstanding that duty to indemnify, COLUMBIA repeatedly rejected claims for indemnity, interpreting the policy in a manner that placed its interests above those of its insured.

40.     COLUMBIA breached the covenant of good faith and fair dealing in refusing to indemnify Tonka Toy Rentals LLC for the claims made by MILLER.

41.     COLUMBIA's breach of the covenant of good faith and fair dealing was a substantial factor in causing TONKA to enter into a Covenant Settlement Agreement and Confession of Judgment After Action.

42.     TONKA was damaged in the amount of the $2,500,000 Confession of Judgment it entered into plus prejudgment interest, fees and costs less the $1,000,000 paid.

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 6 of 9

43.    TONKA properly assigned its claims for breach of insurance contract, insurance bad faith and punitive damages to MILLER.

## COUNT THREE

### Punitive Damages

44.    Plaintiffs incorporate by reference the allegations contained within paragraphs 1-44, and further alleges as follows:

45.    COLUMBIA was required to seek approval of the State of Alaska Division of Insurance to conduct the business of providing insurance in Alaska.

46.    In order to gain and maintain approval to sell insurance in Alaska, COLUMBIA promised and represented that it would follow Alaska state law and insurance regulations.

47.    In order to gain and maintain approval to sell insurance in Alaska, COLUMBIA promised and represented that officers, employees, adjusters, attorneys and agents, would be knowledgeable and follow Alaska law as it related to claims handling.

48.    Despite those promises, COLUMBIA's conduct in this case, and more particularly the conduct of its officers, employees, adjusters, attorneys and agents, demonstrated a blatant disregard for the laws of the State of Alaska and legal requirements for claims handling.

49.    More particularly, COLUMBIA refused to defend a claim by JAMES and APRIL MILLER that "gave rise to a possible finding of liability covered by the policy".

50.    More particularly, COLUMBIA refused to defend the lawsuit brought by JAMES and APRIL MILLER, the complaint "... on its face alleges facts which standing alone, give rise to a possible finding of liability covered by the policy."

51.    COLUMBIA's failure to properly train and supervise its officers, employees, adjusters, attorneys and agents, continued past its denial of the claim and refusal to provide a defense and/or indemnity. On information and belief, when advised by counsel for Tonka Toy Rentals LLC of the requirement under ARCP 26 to provide a copy of the insurance policy, COLUMBIA initially refused. Subsequently, while it agreed to provide the insurance policy, COLUMBIA refused to provide a copy of the claim file, again, a basic requirement of ARCP 26. Ultimately, COLUMBIA, despite providing insurance for TONKA and being advised of

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 7 of 9

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax (888) 856-3894

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax:(888) 856-3894

1  the requirement that it provide a copy of the claims file, refused to do so and said it would only

2  respond to a subpoena.

3      52.    COLUMBIA, its officers, employees, adjusters, attorneys and agents, similarly

4  acted in wanton disregard for the rights of its policy holder in refusing to indemnify the claims

5  brought by MILLER.  This is the case even though the policy specifically assured coverage for

6  vehicles that were subject to mandatory insurance as was the 1990 Ford truck specifically

   identified as a covered vehicle by the policy.

7      53.    Given the important statutory and regulatory requirements regarding knowledge

8  of the law, adherence to the law, and competence in training and oversight required of

9  insurance carriers, the foregoing failures by COLUMBIA, its officers, employees, adjusters,

10 attorneys and agents, to defend and indemnify the claims and complaint brought by MILLER,

11 was (1) outrageous, including acts done with malice or bad movies; or (2) evidenced reckless

12 indifference to the interest of another person; to wit, COLUMBIA's insured, TONKA.  This

13 conduct warrants an award of punitive damages pursuant to Alaska Statute § 09.17.020.

14

15                            **PRAYER FOR RELIEF**

16     WHEREFORE, Plaintiffs JAMES L. MILLER and APRIL MILLER pray for the

17 following relief from COLUMBIA INSURANCE COMPANY:

18     1.    Damages pursuant to the Confession of Judgment After Action dated December

19 26, 2013, in the amount of $2,500,000.00 plus prejudgment interest, costs and attorneys' fees

20 less $1,000,000 paid on January 8, 2014.

21     2.    Punitive damages according to proof;

22     3.    Costs and Attorneys' fees as allowed by law;

23     4.    Pre-judgment and post-judgment interest at the highest rates allowed by law;

24     5.    For such other and further relief at the Court may deem just and equitable.

25

26

27 COMPLAINT FOR INSURANCE BAD FAITH

28 *Miller  v. Columbia Insurance Company*
   Page 8 of 9

DATED: Wednesday, January 08, 2014, at Juneau, Alaska.

CHOATE LAW FIRM LLC
Attorneys for Plaintiffs

By: _____
Mark Choate, 8011070

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax:(888) 856-3894

COMPLAINT FOR INSURANCE BAD FAITH
*Miller v. Columbia Insurance Company*
Page 9 of 9

THIS MATTER IS FORMALLY
ASSIGNED TO
LOUIS J. MENENDEZ
SUPERIOR COURT JUDGE

Columbia Insurance Company

A STOCK COMPANY

SCANNED

# COMMERCIAL POLICY

Report **ALL** Accidents To:

## 1-800-356-5750

24 Hour          Toll Free

**IMPORTANT NOTICE**
**TO AUTOMOBILE POLICYHOLDERS**

If any new or replacement drivers are hired
during the term of this policy, notify the
company immediately. Failure to do so may
result in termination of your policy.

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM
AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY. THIS POLICY IS A LEGAL
CONTRACT BETWEEN THE POLICY OWNER AND THE COMPANY.

**READ YOUR POLICY CAREFULLY**

M-4600a (04/2003)

02/21/2012 08:35 91A347D0-97DB-4063-B57D-CFC547AAECD3
Page 1 of 3

IF 000048

EXH 1 Page 1 of 39

## COMMON POLICY CONDITIONS

### All Coverages included in this policy are subject to the following conditions:

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 10 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date at 12:01 a.m. unless another time is stated on the cancellation notice.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the condition we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

M-4600e (04/2003)

Page 2 of 3

IF 000049

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishings by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   "Property damage" includes all forms of radioactive contamination of property.

IF 000050

71APR259751
RENEWAL OF NUMBER

**COLUMBIA INSURANCE COMPANY**
**OMAHA, NEBRASKA**
**BUSINESS AUTO COVERAGE DECLARATIONS**

☐ The Declarations
include a second part
designated "Part 2".

71 APR 272587

GA Code:   NA6465

ITEM ONE NAMED INSURED & ADDRESS
TONKA TOY RENTALS LLC
PO BOX 816
PETERSBURG, AK 99833

FORM OF NAMED INSURED'S BUSINESS:   LLC
NAMED INSURED'S BUSINESS:   FUEL DELIVERY

POLICY PERIOD: Policy covers FROM   03/19/2012 12:01 AM   TO   03/19/2013   12:01 A.M. Standard Time at the Named Insured's Address stated above.

ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form shown which autos are covered autos) | LIMIT OF INSURANCE THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | | PREMIUM |
|---|---|---|---|---|
| LIABILITY | 7 | $ | 1,000,000 CSL | $ |
| PERSONAL INJURY PROTECTION (P.I.P.) (or equivalent No-fault coverage) | | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS Deductible | | $ |
| ADDED P.I.P. (or equivalent added No-fault cov.) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | | $ |
| PROPERTY PROTECTION INSURANCE (P.P.I.) (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $ Deductible FOR EACH ACCIDENT | | $ |
| AUTO MEDICAL PAYMENTS | 7 | $ | 5,000 | $ |
| UNINSURED MOTORISTS | 16 | $ | 500,000 CSL (BI/PD) | $ |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorist Coverage) | | $ | | $ |
| COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE OR COST OF REPAIR OR REPLACEMENT WHICHEVER IS LESS MINUS | See M 4574d $ (06/2005)  Deductible FOR EACH COVERED AUTO | $ |
| SPECIFIED CAUSES OF LOSS | | | $   Deductible FOR EACH COVERED AUTO | $ |
| COLLISION COVERAGE | 7 | | See M 4574d $ (06/2005)  Deductible FOR EACH COVERED AUTO | $ |
| TOWING AND LABOR | | $ | Deductible FOR EACH COVERED AUTO | $ |
| FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION See M4572 (12/94) | | PREMIUM FOR ENDORSEMENTS | | $ |
| | | ESTIMATED TOTAL PREMIUM | | $ |

ENTER SYMBOL 10 DESCRIPTION HERE:
Only those autos described in Item Three of the Declarations with Liability premium shown.

POLICY SUBJECT TO A FULLY EARNED POLICYWRITING MINIMUM PREMIUM OF $ _____   0   IF CANCELLED BY THE INSURED.

ITEM THREE - SCHEDULE OF COVERED AUTOS   AS ATTACHED

PACIFIC INTERNATIONAL UNDS INC
Countersigned At   EDMONDS, WA

In Witness whereof, we have caused this policy to be executed and

_____ Secretary

By _____
AUTHORIZED REPRESENTATIVE

_____ President
02/21/2012 08:35 91A347D0-67DB-4063-857D-CFC547AAECD3;

C-4499c (07/2009)

IF 000051

EXH 1 Page 4 of 39

## SCHEDULE OF FORMS AND ENDORSEMENTS AT POLICY INCEPTION

POLICY #     71 APR 272587

INSURED      TONKA TOY RENTALS LLC

EFFECTIVE    03/15/2012 12:01 AM

| | | |
|---|---|---|
| M 4600a | 04/2003 | Commercial Policy Jacket |
| C 4499c | 07/2006 | Business Auto Coverage Declarations |
| M 4572 | 12/1994 | Schedule of Forms and Endorsements at Policy Inception |
| M 5171 | 08/2004 | Schedule of Covered Autos |
| CA 0001 | 03/2006 | Business Auto Coverage Form |
| M 4574d | 03/2005 | Alaska Stated Amount Insurance |
| M 4582c | 05/1999 | Alaska Rented Vehicle Limit of Insurance |
| CA 2168 | 03/2008 | Alaska Uninsured and Underinsured Motorists Coverage |
| M 4487 | 04/1994 | Auto Medical Payments Coverage |
| CA 9944 | 12/1993 | Loss Payable Clause |
| CA 0173 | 03/2006 | Alaska Changes |
| M 5479 | 04/2010 | Towing and Storing Costs |
| CA 2305 | 12/1993 | Wrong Delivery of Liquid Products |
| IL 0176 | 06/2011 | Alaska Change - Appraisal |
| IL 0280 | 09/2007 | Alaska Changes - Cancellation & Nonrenewal |
| M 4481b | 02/1997 | Alaska Changes - Attorneys Fees |
| M 3795 | 03/1987 | Punitive Damage Exclusion Duty to Defend Amendment |

Form Version 041001

02/21/2012 09:36 91A347D0-87DB-4363-B57D-CFC547AAEC03

M-4572 (12/94)

IF 000052

M-5171 (08/2004)

POLICY NUMBER 71 APR 272587

EFFECTIVE DATE 03/15/2012 12:01 AM

NAMED INSURED TONKA TOY RENTALS LLC

| Policy Level Coverage | The premium charge for Uninsured Motorist Coverage is a policy charge; separate premium charges are not made for individual covered autos. | | |
|---|---|---|---|
| Uninsured Motorist Coverage | | | |
| Underinsured Motorist Coverage | | | |
| Other | | | |

| Vehicle # | Year | Make & Model | VIN | *Use (C/S/R) | Radius | Garaging Territory | Garaging City, State | GVW or Seating Cap |
|---|---|---|---|---|---|---|---|---|
| | Liability Premium | Medical Payments Premium | Personal Injury Protection Premium | Additional Insured Premium | | | In-Tow Premium | Cargo Premium |
| | Stated Limit or ACV | Specified Causes of Comprehensive (C) | Specified Causes of Comprehensive Premium | Specified Causes of Comprehensive Deductible | | | Collision Premium | Collision Deductible |
| 1 | 2006 | KENWORTH T300 | 2NKMHT7X06M169299 | C | 80 Miles | 200 | PETERSBURG, AK | 45,000 Lbs. |
| | 780 | | 77 | | | | | |
| | 90,000 | C | | Incl | | 2,000 Ded | 1,699 | 2500 Ded |
| 2 | 1990 | FORD LT9000 | 1FDYU9EA5LVA43906 | C | 80 Miles | 222 | PETERSBURG, AK | 48,001 Lbs. |
| | 1,848 | | 77 | | | | | |
| | 30,000 | C | | Incl | | 2,000 Ded | 980 | 2500 Ded |
| 3 | 1984 | GMC DUMP TRUCK | 1GDP7D1P0EV504427 | C | 80 Miles | 200 | PETERSBURG, AK | 48,001 Lbs. |
| | 1,207 | | 77 | | | | | |

*Use (C = Commercial, S = Service, R = Retail)

M-5171 (08/2004)

02/21/2012 08:36 91A347D0-67DB-4363-B57D-CFC547AAECD3

IF 000053

EXH 1 Page 8 of 39

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

02/21/2012 08:35 01A347D0-87DB-4003-B57D-CFC547AAECD3

IF 000054

| 19 | Mobile Equip- | Only those "autos" that are land vehicles and that would qualify under the definition of |
| | ment Subject To | "mobile equipment" under this policy if they were not subject to a compulsory or financial |
| | Compulsory Or | responsibility law or other motor vehicle insurance law where they are licensed or |
| | Financial Re- | principally garaged. |
| | sponsibility Or | |
| | Other Motor Ve- | |
| | hicle Insurance | |
| | Law Only | |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:
   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

**SECTION II - LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":
   a. You for any covered "auto".
   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© ISO Properties, Inc., 2005

CA 00 01 03 06    ☐

IF 000055

Case 1:14-cv-00003-TMB   Document 1-1   Filed 02/06/14   Page 17 of 64   Exhibit A
Page 17 of 64

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. Coverage Extensions

a. Supplementary Payments
We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. Out-Of-State Coverage Extensions
While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. Exclusions
This insurance does not apply to any of the following:

1. Expected Or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. Contractual
Liability assumed under any contract or agreement.
But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. Workers' Compensation
Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. Employee Indemnification And Employer's Liability
"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

CA 00 01 03 06          © ISO Properties, Inc., 2005          Page 3 of 12     □

IF 000056

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

© ISO Properties, Inc., 2005

CA 00 01 03 06 □

IF 000057

Case 1:14-cv-00003-TMB   Document 1-1   Filed 02/06/14   Page 19 of 64   Exhibit A
Page 19 of 64

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

SECTION III - PHYSICAL DAMAGE COVERAGE

A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

b. Specified Causes Of Loss Coverage

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

IF 000058

c. **Collision Coverage**
Caused by:
(1) The covered "auto's" collision with another object; or
(2) The covered "auto's" overturn.

2. **Towing**
We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**
If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:
a. Glass breakage;
b. "Loss" caused by hitting a bird or animal; and
c. "Loss" caused by falling objects or missiles.
However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**
a. **Transportation Expenses**
We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

b. **Loss Of Use Expenses**
For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:
(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or
(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".
However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

B. **Exclusions**
1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
a. **Nuclear Hazard**
(1) The explosion of any weapon employing atomic fission or fusion; or
(2) Nuclear reaction or radiation, or radioactive contamination, however caused.
b. **War Or Military Action**
(1) War, including undeclared or civil war;
(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.
2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.
3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:
a. Wear and tear, freezing, mechanical or electrical breakdown.
b. Blowouts, punctures or other road damage to tires.
4. We will not pay for "loss" to any of the following:
a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

© ISO Properties, Inc., 2005

CA 00 01 03 06 □

IF 000059

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

C. Limit Of Insurance

1. The most we will pay for "loss" in any one "accident" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. Loss Conditions

1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

IF 000060

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**
No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **Loss Payment - Physical Damage Coverages**
At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**
If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

1. **Bankruptcy**
Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**
This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**
If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee - Physical Damage Coverages**
We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

© ISO Properties, Inc., 2005

CA 00 01 03 06 □

IF 000061

**5. Other Insurance**

   **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      **(1)** Excess while it is connected to a motor vehicle you do not own.

      **(2)** Primary while it is connected to a covered "auto" you own.

   **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   **c.** Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

   **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

The coverage territory is:

   **a.** The United States of America;

   **b.** The territories and possessions of the United States of America;

   **c.** Puerto Rico;

   **d.** Canada; and

   **e.** Anywhere in the world if:

      **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

   **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

IF 000062

EXH 1 Page 15 of 39

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

© ISO Properties, Inc., 2005

CA 00 01 03 06    □

IF 000063

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, to you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing; or

    b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver, or

    c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2. Vehicles maintained for use solely on or next to premises you own or rent;

    3. Vehicles that travel on crawler treads;

    4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a. Power cranes, shovels, loaders, diggers or drills; or

      b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

    5. Vehicles not described in Paragraph 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b. Cherry pickers and similar devices used to raise or lower workers.

    6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      a. Equipment designed primarily for:

        (1) Snow removal;

        (2) Road maintenance, but not construction or resurfacing; or

        (3) Street cleaning;

      b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

     © ISO Properties, Inc., 2005      □

IF 000064

N. "Suit" means a civil proceeding in which:
1. Damages because of "bodily injury" or "property damage"; or
2. A "covered pollution cost or expense",
to which this insurance applies, are alleged.
"Suit" includes:
   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005

CA 00 01 03 06 □

IF 000065

EXH 1 Page 18 of 39

# ALASKA STATED AMOUNT INSURANCE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

TRUCKERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below. This endorsement applies only to "Rented Vehicles" and those vehicles and coverages scheduled below or as may be subsequently added to the policy by endorsement and for which physical damage coverage is afforded and for which a limit of liability is indicated. Vehicle Number refers to the vehicle number and corresponding vehicle described in the "Schedule of Covered Autos" in the declarations attached to this policy.

| VEHICLE NUMBER | LIMIT OF LIABILITY | DEDUCTIBLE | COVERAGE | |
|---|---|---|---|---|
| See M-5171 (06/2004) | $ See M-5171 (06/2004) | $ See M-5171 (06/2004) | ☐ Collision See M-5171 (06/2004) | |
| | | $ See M-5171 (06/2004) | ☐ Comprehensive | ☐ Specified Causes of Loss |

The following conditions apply to covered autos scheduled above:

BUSINESS AUTO COVERAGE FORM - SECTION III - PHYSICAL DAMAGE COVERAGE, SUBSECTION C. LIMIT OF INSURANCE and SUBSECTION D. DEDUCTIBLE or TRUCKERS COVERAGE FORM - SECTION IV - PHYSICAL DAMAGE COVERAGE, SUBSECTION C. LIMIT OF INSURANCE and SUBSECTION D. DEDUCTIBLE are changed to read:

C. LIMIT OF INSURANCE
    1. The most we will pay for "loss" in any one "accident" is the lesser of:
        a. The limit of liability shown in the Schedule of this endorsement for the damaged or stolen "auto", or
        b. The actual cash value of the damaged or stolen "auto" as of the time of the "loss", or
        c. The cost of repairing or replacing the damaged or stolen "auto" with another of like kind or quality.

    less the applicable deductible.
    2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".
    3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.
D. DEDUCTIBLE: For each covered "auto", our obligation to pay for, repair, return or replace the damaged or stolen "auto" will be reduced by the applicable deductible shown in this Endorsement.

BUSINESS AUTO COVERAGE FORM - SECTION IV - BUSINESS AUTO CONDITIONS, SUBSECTION A.4. or TRUCKERS COVERAGE FORM - SECTION V - TRUCKERS CONDITIONS, SUBSECTION A.4. is changed to read:

A. LOSS CONDITIONS
    4. LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES
        At our option we may:
        (a) Pay for, repair or replace the damaged or stolen "auto";
        (b) Return the stolen "auto", at our expense. We will pay for any damage that results to the "auto" from the theft; or
        (c) Take all or any part of the damaged or stolen "auto" at an agreed or appraised value. If we pay either the scheduled limit of liability or its actual cash value, we are entitled to all salvage.

If we pay for the "loss", we will also include payment of the applicable sales tax for the damaged or stolen "auto".

03/21/2012 09:35 91A347D0-57DB-4063-B57D-CFC547AAECD3

IF 000066

Pursuant to Alaska Statute 21.89.020, the following conditions apply to "Rented Vehicles":

| SCHEDULE | |
|---|---|
| "Rented Vehicle" Physical Damage Limit | Premium |
| See below | $ 0 |

A "Rented Vehicle" is defined as an "auto" under "short-term" written lease to an insured. "Short-term" is defined as any period of time less than thirty (30) days in a given year. For purposes of this definition, all such leases in a given year between the same parties and involving the same vehicle shall be considered as one lease.

If two or more scheduled vehicles have the same limit of liability but different types of physical damage coverage, the physical damage coverage provided for a "Rented Vehicle" shall be the most inclusive type of coverage provided under this policy.

This coverage is excess over any other collectible insurance.

BUSINESS AUTO COVERAGE FORM - SECTION III - PHYSICAL DAMAGE COVERAGE, C. LIMIT OF INSURANCE or TRUCKERS COVERAGE FORM - SECTION IV - PHYSICAL DAMAGE COVERAGE, C. LIMIT OF INSURANCE is changed to read as follows:

C. LIMIT OF INSURANCE
The most we will pay for "loss" in any one "accident" is the lesser of:
(a) The amount determined is the Coinsurance Provision below; or
(b) $30,000, which is the maximum Limit of Liability for any "Rented Vehicle" in this endorsement to the Business Auto Coverage form, less the applicable deductible; or
(c) $60,000, which is the maximum Limit of Liability for any "Rented Vehicle" in this endorsement to the Truckers Coverage form, less the applicable deductible; or
(d) The actual cash value of the damaged or stolen "Rented Vehicle" as of the time of the "loss", less the applicable deductible; or
(e) The cost of repairing or replacing the damaged or stolen "Rented Vehicle" with another of like kind or quality, less the applicable deductible.

Coinsurance Provision:

Our limit of liability for any "Rented Vehicle" whose value at the time of loss multiplied by the coinsurance percentage of 90% is greater than the highest applicable Limit of Liability for any scheduled vehicle will be determined by:

(a) Multiplying the value of the "Rented Vehicle" at the time of loss by the Coinsurance percentage of 90%;
(b) Dividing the highest applicable Limit of Liability for any scheduled vehicle by the figure determined in step (a);
(c) Multiplying the total amount of the loss, by the figure determined in step (b); and
(d) Subtracting the highest applicable deductible for any scheduled vehicle from the figure determined in step (c).

BUSINESS AUTO COVERAGE FORM - SECTION III - PHYSICAL DAMAGE COVERAGE, D. DEDUCTIBLE or TRUCKERS COVERAGE FORM - SECTION IV - PHYSICAL DAMAGE COVERAGE, D. DEDUCTIBLE

D. DEDUCTIBLE is replaced by the following: For a "Rented Vehicle", the applicable deductible shall be the highest deductible specified for any scheduled vehicle.

BUSINESS AUTO COVERAGE FORM - SECTION IV - BUSINESS AUTO CONDITIONS, SUBSECTION A.4. or TRUCKERS COVERAGE FORM - SECTION V - TRUCKERS CONDITIONS, SUBSECTION A.4. is changed to read:

A. LOSS CONDITIONS
4. LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES
At our option we may:
(a) Pay for, repair or replace the damaged or stolen "Rented Vehicle";
(b) Return the stolen "Rented Vehicle", at our expense. We will pay for any damage that results to the "Rented Vehicle" from the theft; or
(c) Take all or any part of the damaged or stolen "Rented Vehicle" at an agreed or appraised value. If we pay the actual cash value, subject to the application of the Coinsurance Provision, we are entitled to all salvage.

If we pay for the "loss", we will also include payment of the applicable sales tax for the damaged or stolen "auto".

B.5.b. in the BUSINESS AUTO COVERAGE FORM - BUSINESS AUTO CONDITIONS or B.5.d. in the TRUCKERS COVERAGE FORM - TRUCKERS CONDITIONS is deleted in its entirety.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| Columbia Insurance Company | 71 APR 272587 |
| | Endorsement Effective |
| | 03/15/2012 12:01 AM |
| Named Insured | Countersigned |
| TONKA TOY RENTALS LLC | by |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-4574d Alaska (06/2009)    Page 2 of 2

IF 000067

M-4592c Alaska (5/1999)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ALASKA RENTED VEHICLE LIMIT OF INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
GARAGE COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below. With respect to the Coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

| SCHEDULE | |
|---|---|
| "Rented Vehicle" Liability Limit | Premium |
| See below | $    50 |

"Rented Vehicle" is defined as an "auto" under "short-term" written lease to an insured. "Short-term" is defined as any period of time less than thirty (30) days in a given year. For purposes of this definition, all such leases in a given year between the same parties and involving the same vehicle shall be considered as one lease.

The following is added to the BUSINESS AUTO COVERAGE FORM or TRUCKERS COVERAGE FORM – SECTION II – LIABILITY COVERAGE, C. LIMIT OF INSURANCE; or to the GARAGE COVERAGE FORM – SECTION II – LIABILITY COVERAGE, C. LIMIT OF INSURANCE, 2. LIMIT OF INSURANCE - "GARAGE OPERATIONS" – COVERED "AUTOS":

Pursuant to Alaska Statute 21.89.020, which requires an automobile liability insurance policy to provide liability coverage in the amount set out in AS 28.22.101(d) for motor vehicles rented in the United States or Canada by a person insured under the policy, the limit of liability coverage for a "Rented Vehicle" will be $50,000 for bodily injury or death of one person in one accident, and subject to the same limit for one person, $100,000 because of bodily injury to or death of two or more persons in one accident, and $25,000 because of injury to or destruction of property of others in one accident.

Regardless of the number of "Rented Vehicles", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages resulting from any one "accident" is the financial responsibility limits specified in AS 28.22.101(d) and as stated above.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| Columbia Insurance Company | 71 APR 272587 |
| | Endorsement Effective |
| | 03/10/2012 12:01 AM |
| Named Insured | Countersigned |
| TONKA TOY RENTALS LLC | by |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-4592c Alaska (5/1999)           02/21/2012 08:35 91A347D9-67DB-4063-B97D-CFC647AAECD3

IF 000068

POLICY NUMBER: 71 APR 272587

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Alaska, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

| Named Insured: | TONKA TOY RENTALS LLC |
|---|---|
| Endorsement Effective Date: | 03/16/2012 12:01 AM |
| Countersignature Of Authorized Representative | |
| Name: | |
| Title: | |
| Signature: | |
| Date: | |

IF 000069

WARNING

WITH RESPECT TO THE COVERAGE PROVIDED BY THIS ENDORSEMENT:

IF THE SCHEDULE INDICATES THAT ITEM 2. – "BODILY INJURY" UNINSURED AND UNDERINSURED
MOTORISTS (UMUIM) COVERAGE ONLY APPLIES, THE NAMED INSURED DOES NOT HAVE "PROPERTY
DAMAGE" UMUIM COVERAGE. DISREGARD ALL REFERENCES TO "PROPERTY DAMAGE" COVERAGE
IN THIS ENDORSEMENT.

IF THE SCHEDULE INDICATES THAT ITEM 3. – "PROPERTY DAMAGE" UNINSURED AND
UNDERINSURED MOTORISTS (UMUIM) COVERAGE ONLY APPLIES, THE NAMED INSURED DOES NOT
HAVE "BODILY INJURY" UMUIM COVERAGE. DISREGARD ALL REFERENCES TO "BODILY INJURY"
COVERAGE IN THIS ENDORSEMENT.

SCHEDULE

| | | | |
|---|---|---|---|
| 1. | "Bodily Injury" And "Property Damage" | $ See C 4489c (07/2006) | Each "Accident" |
| | | or | |
| 2. | "Bodily Injury" Only | $ | Each "Accident" |
| | | or | |
| 3. | "Property Damage" Only | $ | Each "Accident" |

The endorsement provides "bodily injury" and "property damage" uninsured and underinsured motorists cover-
age unless an "X" is entered below.

☐ If an "X" is entered in this box, this endorsement provides "bodily injury" uninsured and underinsured
motorists coverage only. The Named Insured does not have "property damage" UMUIM coverage.
Disregard all references to "property damage" coverage in this endorsement.

☐ If an "X" is entered in this box, this endorsement provides "property damage" uninsured and underinsured
motorists coverage only. The Named Insured does not have "bodily injury" UM/UIM coverage. Disregard
all references to "bodily injury" coverage in this endorsement.

| Attorney's Fees For A Judgment Of | Additional Premium |
|---|---|
| $ | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Page 2 of 8                    © ISO Properties, Inc., 2005                    CA 21 60 05 06    ☐

IF 000070

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" because of:

   a. "Bodily injury" sustained by an "insured" and caused by an "accident" if the Schedule or Declarations indicates that:

      (1) Uninsured/Underinsured Motorists Coverage applies to both "bodily injury" and "property damage", or

      (2) Uninsured/Underinsured Motorists Coverage applies to "bodily injury" only.

   b. "Property damage" caused by an "accident", if the Schedule or Declarations indicates that:

      (1) Uninsured/Underinsured Motorists Coverage applies to both "bodily injury" and "property damage", or

      (2) Uninsured/Underinsured Motorists Coverage applies to "property damage" only.

   The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under the coverage selected under this endorsement only if a. or b. below applies:

   a. The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. No judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" is binding on us unless we have:

   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Had a reasonable opportunity to protect our interests in the "suit".

4. In any "suit" we defend in Alaska, we will pay that portion of the attorney's fees that would have been taxed against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" as costs which does not exceed the amount allowed for a contested case in the schedule of attorney's fees contained in Alaska Civil Rule of Procedure 82 for a judgment equal to the applicable Limit of Liability.

   However, if a premium and a judgment amount are shown in the Schedule or Declarations, we will pay, instead of the attorney's fees provided in the above paragraph, that portion of the attorney's fees that would have been taxed against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" as costs which do not exceed the amount allowed for a contested case in Alaska Civil Rule of Procedure 82 for the judgment amount shown in the Schedule or Declarations.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured". This provision only applies if "bodily injury" coverage is selected in the Schedule or Declarations.

CA 21 60 03 06      © ISO Properties, Inc., 2005      Page 3 of 6   □

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

  a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured". This provision only applies if "bodily injury" coverage is selected in the Schedule or Declarations.

  c. The Named Insured for "property damage" only. This provision only applies if "property damage" coverage is selected in the Schedule or Declarations.

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent, if the settlement prejudices our right to recover payments. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle" in accordance with the procedure described in Paragraph A.2.b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation or similar occupational disability benefits law.

3. The direct or indirect benefit of any insurer of property.

4. Property contained in the covered "auto".

5. The first $250 of the amount of "property damage" to a covered "auto" as the result of any one "accident".

6. "Bodily injury" sustained by any "insured" while "occupying" or struck by any vehicle owned by an individual Named Insured or any "family member" that is not a covered "auto".

7. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Property damage" for which the "insured" has been compensated by other property or physical damage insurance.

9. "Property damage" to an "auto" owned by the Named Insured or any "family member" which is not a covered "auto".

10. Punitive or exemplary damages.

11. "Bodily injury" or "property damage" arising out of:

  a. War, including undeclared or civil war;

  b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" will be as follows:

  a. If the Schedule or Declarations indicates that Uninsured/Underinsured Motorists Coverage applies to both "bodily injury" and "property damage", the limit of insurance will be the lesser of:

   (1) The difference between the amount of an "insured's" damages for "bodily injury" and "property damage" and the amount paid to that "insured" for such damages, by or for a person who is or may be held legally liable, and

   (2) The Limit Of Insurance for Uninsured And Underinsured Motorists Coverage shown in the Schedule.

  b. If the Schedule or Declarations indicates that Uninsured/Underinsured Motorists Coverage applies to "bodily injury" only, the limit of insurance will be the lesser of:

   (1) The difference between the amount of an "insured's" damages for "bodily injury" and the amount paid to that "insured" for such damages, by or for a person who is or may be held legally liable for "bodily injury", and

   (2) The Limit Of Insurance for Uninsured And Underinsured Motorists Coverage shown in the Schedule.

  c. If the Schedule or Declarations indicates that Uninsured/Underinsured Motorists Coverage applies to "property damage" only, the limit of insurance will be the lesser of:

   (1) The difference between the amount of an "insured's" damages for "property damage" and the amount paid to that "insured" for such damages, by or for a person who is or may be held legally liable for "property damage", and

IF 000072

(2) The Limit of Insurance for Uninsured And Underinsured Motorists Coverage shown in the Schedule.

2. If the Schedule or Declarations indicates that Uninsured/Underinsured Motorists Coverage applies to "bodily injury", any amount payable for damages shall apply over and above any amounts paid to the "insured":
   a. By or for a person who is or may be held legally liable, including all sums paid under this Coverage Form's Liability Coverage; or
   b. Under any valid and collectible "bodily injury" or death liability insurance.

3. If the Schedule or Declarations indicates that Uninsured/Underinsured Motorists Coverage applies to "bodily injury", any amount payable for damages shall apply over and above any amounts paid or payable to the "insured" under any valid and collectible automobile medical payments insurance, workers' compensation or similar occupational disability benefits law.

4. Any amount paid under this insurance will reduce any amount an "insured" may be paid for the same damages under this Coverage Form's Liability Coverage.

5. We will not pay for a "loss" which is paid under Physical Damage Coverage.

6. In no event will an "insured" be entitled to receive duplicate payments for the same elements of "loss".

E. **Changes In Conditions**
The Conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

1. Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers And Motor Carrier Coverage Forms are replaced by the following:
   a. If there is other applicable uninsured and/or underinsured motorists coverage available under more than one provision of coverage when two or more vehicles are insured under this Coverage Form or policy, the maximum recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under the coverage provided by this Coverage Form or policy. If there is other applicable uninsured and/or underinsured motorists coverage available under any other Coverage Form or policy issued to the Named Insured by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one Coverage Form or policy.

b. If there is other applicable uninsured motorists coverage and underinsured motorists coverage available under more than one Coverage Form or policy, then the following priorities of coverage apply:

| First | A policy or coverage covering a motor vehicle "occupied" by the injured person or a policy or coverage covering a pedestrian as a named insured; |
|-------|------------------------------------------------|
| Second | A policy or coverage covering a motor vehicle "occupied" by the injured person as an insured other than as a named insured; |
| Third | A policy or coverage not covering a motor vehicle "occupied" by the injured person but covering the injured person as a named insured; |
| Fourth | A policy or coverage not covering a motor vehicle "occupied" by the injured person but covering the injured person as an "insured" other than as a named insured. |

c. We will pay only our share of the "loss". Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies applicable on the same level of priority.

2. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:
   a. Promptly notify the police if a hit-and-run driver is involved; and
   b. Promptly send us copies of the legal papers if a "suit" is brought.
   c. A person seeking coverage from an "underinsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of the "underinsured motor vehicle".

3. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:
   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

IF 000073

We will be entitled to recovery only after the "insured" has been fully compensated for damages.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle", and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of the coverage provided by this endorsement; and

b. We also have a right to recover the advance payment.

4. The following Condition is added:

ARBITRATION

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. All arbitration expenses and fees, not including counsel or adjuster fees, will be paid as determined by the arbitrators. Each party will pay the counsel fees and adjuster fees it incurs.

b. Unless both parties agree otherwise, arbitration will take place in the jurisdiction in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of a covered "auto". However, "property damage" does not include loss of use.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy applies at the time of an "accident", or

b. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered auto or a vehicle an "insured" is "occupying".

However, an "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency, except a governmental unit or agency that is or becomes insolvent; or

c. Designed for use mainly off public roads while not on public roads.

5. "Underinsured motor vehicle" means a land motor vehicle or "trailer" licensed for highway use for which the sum of all liability bonds or policies that apply at the time of an "accident" is less than the amount the covered person is legally entitled to recover for bodily injury or property damage from the owner or operator of the underinsured motor vehicle.

However, an "underinsured motor vehicle" does not include any vehicle for which an insuring or bonding company denies coverage or is or becomes insolvent.

IF 000074

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. COVERAGE**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. WHO IS AN INSURED**

1. You while "occupying" or while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. EXCLUSIONS**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your employee arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic employees if not entitled to workers' compensation benefits.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or

stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. LIMIT OF INSURANCE**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the LIMIT OF INSURANCE for AUTO MEDICAL PAYMENTS COVERAGE shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**E. CHANGES IN CONDITIONS**

The CONDITIONS are changed for AUTO MEDICAL PAYMENTS COVERAGE as follows:

1. The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition does not apply.

2. The reference in OTHER INSURANCE in the Business Auto and Garage Coverage Forms and OTHER INSURANCE - PRIMARY AND EXCESS INSURANCE PROVISIONS in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. RIGHT OF SUBROGATION**

When "we" pay, an insured person's rights of recovery from anyone else becomes "ours" up to the amount "we" have paid. The insured person must protect these rights and help "us" enforce them.

**G. ADDITIONAL DEFINITIONS**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1993

M-4497 (4/94)

02/21/2012 09:35 91A34FD0-67DB-4069-D57D-0FC547AAECD3

IF 000075

71 APR 272587

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

B. The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C. We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payments to the loss payee, we will obtain his or her rights against any other party.

| | |
|---|---|
| Policy Number | 71 APR 272587 |
| Company | Columbia Insurance Company |
| Insured | TONKA TOY RENTALS LLC |
| Effective Dates | 03/15/2012 12:01 AM to 03/15/2013 12:01 AM |
| Secured Party | JASON & VANESSA MILLER<br>PO BOX 1473<br>PETERSBURG, AK 99833 |

The Coverage described below applies only to those autos listed below.

| Veh # | Year, Make, Model | VIN | Limit of Insurance | Comp Deduct | Spec C of L Deduct | Collision Deduct |
|---|---|---|---|---|---|---|
| 2 | 1990 FORD LT8000 | 1FDYU82A8LVA43936 | 35,000 | 2,500 | | 2,500 |

03/21/2012 08:35 91A347C0-47DB-4363-B57D-CFC547AAECO3

CA 99 44 12 93          Copyright, Insurance Services Office, Inc., 1993          Pages 1 of 1  ☐

IF 000076

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA CHANGES

This endorsement modifies coverage provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

The War exclusion under Paragraph B. Exclusions of Section II – Liability Coverage is replaced by the following:

WAR

"Bodily injury" or "property damage" arising out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B. Changes In Physical Damage Coverage**

1. If the Declarations indicate that Physical Damage Coverage is provided for covered "autos" and that Liability Coverage is not provided for covered "autos", the following statement applies:

THIS COVERAGE FORM PROVIDES INSURANCE ONLY AGAINST DAMAGE TO THE "AUTO". THIS COVERAGE FORM DOES NOT INSURE AGAINST "BODILY INJURY" OR "PROPERTY DAMAGE" LIABILITY AND DOES NOT SATISFY THE MANDATORY INSURANCE REQUIREMENTS OF AS 28.22.011.

2. The lead-in to Paragraph B.1. Exclusions in the Physical Damage Coverage Section is replaced by the following:

We will not pay for "loss" caused by or resulting from any of the following:

**C. Changes In Conditions**

1. The lead-in to the Duties In The Event Of Accident, Claim, Suit Or Loss Condition is replaced by the following:

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

2. With respect to vehicles rented in the United States or Canada, the Other Insurance Condition in the Business Auto and Business Auto Physical Damage Coverage Forms and the Other Insurance – Primary And Excess Insurance Provisions Condition in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

a. Payments from applicable coverage provided under liability coverage and/or physical damage coverage for vehicles rented in the United States or Canada will be made in the following order of priority:

(1) From a policy or coverage purchased by the operator from the owner of the rental vehicle;

(2) From a personal policy of liability and/or physical damage coverage insuring the operator of a rented vehicle; and

(3) From the policy or coverage insuring the owner of the rental vehicle as the named insured.

02/21/2012 09:35 91A347D0-87DB-4063-B57D-CFC547AAECD3

CA 01 79 03 06 | © ISO Properties, Inc., 2005 | Page 1 of 2 ☐

IF 000077

b. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**D. Changes In Garagekeepers Coverage**

If the Garagekeepers Coverage Endorsement or the Garagekeepers Coverage – Customers' Sound Receiving Equipment Endorsement is attached, then Exclusion 3. is replaced by the following:

3. We will not pay for "loss" caused by or resulting from the following:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**E. Changes In Medical Payments**

If the Auto Medical Payments Coverage endorsement is attached, then the exclusion which refers to declared or undeclared war or insurrection is replaced by the following:

This insurance does not apply to:

"Bodily injury" arising out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2005

CA 01 79 03 06    ☐

IF 000078

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOWING AND STORING COSTS

The following modifies the Coverage Extensions under Physical Damage Coverage:

In the event of a "loss" to a covered "auto" to which this policy's Physical Damage Coverage applies, we will pay the necessary and reasonable incurred cost of towing the covered "auto" to the nearest facility capable of making the necessary repairs or to another location if we agree upon that location prior to towing. We will also pay the necessary and reasonable incurred cost of storing the covered "auto" for the time required to adjust the claim, subject to a maximum time in storage of 30 days.

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| Columbia Insurance Company | 71 APR 272587 |
| | Endorsement Effective |
| | 03/15/2012 12:01 AM |
| Named Insured | Countersigned by |
| TONKA TOY RENTALS LLC | |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5479 (04/2010)                    02/21/2012 08:39 91A347D3-57DB-4063-B57D-CFC347AAECD3

IF 000079

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WRONG DELIVERY OF LIQUID PRODUCTS

This endorsement modifies insurance under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the "bodily injury" or "property damage" occurs after delivery has been completed.

Delivery is considered completed even if further service or maintenance work, or correction, repair or replacement is required because of wrong delivery.

CA 23 05 12 93          Copyright, Insurance Services Office, Inc., 1993          Page 1 of 1

IF 000080

EXH 1 Page 33 of 39

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA CHANGES – APPRAISAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

A. The following provisions are replaced by the Appraisal Provision set forth below:

1. Commercial Automobile Coverage Part, Appraisal for Physical Damage Loss; and

2. Capital Assets Program (Output Policy) Coverage Part, Appraisal Loss Condition, but only if Endorsement OP 04 03, Vehicle Physical Damage Condition, is attached.

If you and we fail to agree on the amount of "loss", either may make a written demand for an appraisal of the "loss". In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the actual cash value and the amount of "loss". If the appraisers submit a written report of an agreement on the actual cash value and the amount of "loss" to us, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding as to the actual cash value and the amount of "loss". Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

B. Except as provided in C. below, the following replaces the Appraisal Conditions in the Equipment Breakdown Coverage Part, the Commercial Inland Marine Coverage Part, the Commercial Property Coverage Part, the Capital Assets Program (Output Policy) Coverage Part, the Farm Coverage Part and the Standard Property Policy:

If you and we fail to agree on the value of the property or the amount of loss ("loss"), either may make a written demand for an appraisal of the loss ("loss"). In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. If they cannot agree, either may request that the choice be made by a judge of a court having jurisdiction. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the value of the property and the amount of loss ("loss"). If the appraisers submit a written report of an agreement on the value of the property and the amount of loss ("loss"), that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding. Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

C. The Appraisal Condition in:
1. Business Income Coverage Form (And Extra Expense) CP 00 30;
2. Business Income Coverage Form (Without Extra Expense) CP 00 32; and
3. Capital Assets Program Coverage Form (Output Policy) OP 00 01, Paragraph A.7. Business Income And Extra Expense

is replaced by the following:

If you and we fail to agree on the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. If they cannot agree, either may request that the choice be made by a judge of a court having jurisdiction. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the amount of Net Income and operating expense or the amount of loss. If the appraisers submit a written report of an agreement on the amount of Net Income and operating expense or the amount of loss, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding. Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirely or proportionately, as determined by the umpire.

Neither party waives any rights under this policy by agreeing to an appraisal.

© Insurance Services Office, Inc., 2010

IL 01 76 09 11    □

IF 000082

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA CHANGES – CANCELLATION
## AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. The Cancellation Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you and the agent or broker of record written notice of cancellation. Such notice, stating the reason for cancellation, must be sent by first class mail at least:

   a. 10 days before the effective date of cancellation if we cancel for:

      (1) Conviction of the insured of a crime having as one of its necessary elements an act increasing a hazard insured against, or

      (2) Fraud or material misrepresentation by the insured or a representative of the insured in obtaining the insurance or by the insured in pursuing a claim under this policy; or

   b. 20 days before the effective date of cancellation if we cancel for:

      (1) Nonpayment of premium, or

      (2) Failure or refusal of the insured to provide the information necessary to confirm exposure or determine the policy premium; or

   c. 60 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail our notice to your last known address and the last known address of the agent or broker of record.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

02/29/2012 08:36 91A347D2-87DB-4063-B57D-CFC547AAECD3

IF 000083

EXH 1 Page 36 of 39

6. If this policy is canceled, we will return any premium refund due to the agent or broker of record, or directly to the first Named Insured, or, if applicable, to the premium finance company. If:
a. We cancel, the refund will be the pro rata unearned premium. The refund will be returned or credited before the effective date of cancellation. However, if cancellation is for:
(1) Nonpayment of premium;
(2) Conviction of the insured of a crime having as one of its necessary elements an act increasing a hazard insured against;
(3) Discovery of fraud or material misrepresentation made by the insured or a representative of the insured in obtaining the insurance or by the insured in pursuing a claim under the policy;
(4) Failure or refusal of the insured to provide the information necessary to confirm exposure or necessary to determine the policy premium; or
(5) A reason described in AS Sec. 21.36.210(a)(2);
any unearned premium shall be returned or credited within 45 days after the cancellation notice is given; or
b. The first Named Insured cancels, the refund:
(1) Will be the pro rata unearned premium minus a cancellation fee of 7.5% of the pro rata unearned premium. However, we will not retain this cancellation fee if this policy is cancelled:
(a) And rewritten with us or in our company group;
(b) At our request;
(c) Because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance; or
(d) After the first year for a prepaid policy written for a term of more than one year; or
(2) Will be returned or credited:
(a) By the effective date of cancellation; or

(b) Within 45 days of your request to cancel;
whichever is later.
If the policy is selected for audit, we will complete the audit within 45 days of receipt of the request for cancellation. The refund will be returned within 45 days of completion of an audit, or the effective date of cancellation, whichever is later.
B. The following is added and supersedes any provision to the contrary:
NONRENEWAL
1. If we decide not to renew this policy, we will mail written notice of nonrenewal, by first class mail, to you and the agent or broker of record at least 45 days before:
a. The expiration date; or
b. The anniversary date if this policy has been written for more than one year or with no fixed expiration date.
2. We need not mail notice of nonrenewal if:
a. We have manifested in good faith our willingness to renew; or
b. The first Named Insured has failed to pay any premium required for this policy; or
c. The first Named Insured fails to pay the premium required for renewal of this policy.
3. Any notice of nonrenewal will be mailed to your last known address and the last known address of the agent or broker of record. A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.
C. The following Condition is added:
NOTICE OF PREMIUM OR COVERAGE CHANGES ON RENEWAL
If the premium to renew this policy increases more than 10% for a reason other than an increase in coverage or exposure basis, or if after the renewal there will be a material restriction or reduction in coverage not specifically requested by the insured, we will mail written notice to your last known address of the agent or broker of record at least 45 days before:
1. The expiration date; or
2. The anniversary date if this policy has been written for more than one year or with no fixed expiration date.

© ISO Properties, Inc., 2006

IL 02 80 09 07 ☐

IF 000084

M-4461b Alaska (2/97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## ALASKA CHANGES - ATTORNEYS FEES

### THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES
### UNDER ALASKA RULE OF CIVIL PROCEDURE 82

This endorsement modifies insurance provided under the policy as follows:

In any suit in Alaska in which we have a right or duty to defend an insured in addition to the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

We will not pay that portion of any attorney's fees that is in excess of fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.

*This limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

Alaska Civil Rule 82 (b) (1) provides the following schedule for fixing the award of attorney's fees to the prevailing party:

|  |  | Contested With Trial | Contested Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $ 25,000 | 20% | 18% | 10% |
| Next | $ 75,000 | 10% | 8% | 3% |
| Next | $400,000 | 10% | 6% | 2% |
| Over | $500,000 | 10% | 2% | 1% |

This schedule sets attorney fees as a percentage of the amount of judgment or claim settlement against you.

We will not pay attorney fees on any amount of judgment or claim settlement against you that exceeds the amount of the applicable Liability Coverage Limit of Insurance as shown in the Declarations. You would be liable to pay any such excess attorney fees.

For example, the attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:

20% of the first $25,000 of a judgment;
10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $125,000, in addition to that amount you would be liable under Alaska Rule of Civil Procedure 82(b)(1) for attorney fees of $15,000, calculated as follows:

| 20% of | $ 25,000 |  | $ 5,000 |
| 10% of | $100,000 |  | $10,000 |
| Total Award | $125,000 | Total Attorney Fees | $15,000 |

If the limit of liability of the applicable coverage is $100,000, we would pay $100,000 of the $125,000 award, and $12,500 for Alaska Rule of Civil Procedure 82(b)(1) attorney fees, calculated as follows:

| 20% of | $ 25,000 |  | $ 5,000 |
| 10% of | $ 75,000 |  | $ 7,500 |
| Total Limit of Liability | $100,000 | Total Attorney Fees Covered | $12,500 |

You would be liable to pay, directly and without our assistance, the remaining $25,000 in liability plus the remaining $2,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

The maximum we will pay for attorney fees awarded as costs is set forth in this endorsement. This is the most we will pay regardless of the number of:

1. Insured persons, or
2. Vehicles or premiums shown in the Declarations.

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| Columbia Insurance Company | 71 APR 272587 |
|  | Endorsement Effective |
|  | 03/15/2012 12:01 AM |
| Named Insured | Countersigned |
| TONKA TOY RENTALS LLC | by |
|  | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-4461b Alaska (2/97)

02/21/2012 08:36 91A347D0-67DB-4063-B57D-CFC347AAEC03

IF 000085

EXH 1 Page 38 of 39

M-3795 (2/87)

## PUNITIVE DAMAGE EXCLUSION
## DUTY TO DEFEND AMENDMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies the insurance provided under all coverage forms and is effective on the inception date of the policy or on the date shown below.

The insuring agreement is amended to provide that this insurance does not apply to any sums awarded as punitive damages.

The Company has the right and duty to defend any suit asking for damages covered by this policy. However, the Company has no duty to defend suits for bodily injury or property damage not covered by this policy. The Company has the right to defend any suit against the insured which seeks both punitive damages and damages covered in the insuring agreement. However, the Company has no duty to defend any suit seeking only punitive damages or where the remaining allegations of a complaint seek only punitive damages, and the Company shall have the right to settle that part or parts of a suit seeking damages other than punitive.

In the event of a conflict of interest between the insured and the Company due to allegations of punitive damage or due to other allegations not covered by the insuring agreement, the Company shall not be obligated to retain separate counsel to represent the interests of the insured with respect to defense of non-covered allegations, but the insured shall have the right to retain separate counsel at the insured's expense to serve as co-counsel. The Company shall not be required to relinquish control of the defense to such co-counsel so long as covered allegations remain in the suit.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| Columbia Insurance Company | 71 APR 272587 |
| | Endorsement Effective |
| | 03/15/2012 12:01 AM |
| Named Insured | Countersigned by |
| TONKA TOY RENTALS LLC | |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-3795 (2/87)

IF 000086

EXH 1 Page 39 of 39

### *Alaska Adjustment Bureau* LLC

PO Box 33335                                          Voice (907) 463-1555
Juneau, AK 99803                 www.akadjbureau.org               Fax (866) 419-7768

September 30, 2012

Jon Deacon
Columbia Insurance Company

<u>**TRANSMITTED VIA E-MAIL TO reports@nationalindemnity.com**</u>

|       |                |                                                        |
|-------|----------------|--------------------------------------------------------|
| RE:   | Claim:         | 71 54 287134                                           |
|       | Policy:        | 71APR272587                                            |
|       | Insured:       | Tonka Toy Rentals, LLC                                 |
|       | Claimant:      | James L. Miller                                        |
|       | Loss location: | South Harbor Crane Dock Petersburg, Alaska             |
|       | Type of loss:  | Liability Investigation                                |
|       | Date of loss:  | July 6, 2012                                           |
|       | Our file:      | 112674 FJL                                             |

Enclosures:  Statutory Letter to Insured
             Copy of E-mail Correspondence to Claimant's Attorney
             Photographs (29)
             Insured Vehicle DMV Record
             Petersburg Harbor's Graphical Presentation and Location of Accident
             Letter of Compliment of Insured's Employee Mike Leonard
             Copy of Claimant's Commercial Fishing Permit
             F/V Aleutian Spirit Data, Owned by Claimant
             Data of the Skiff Being Hauled In
             ISO Worksheet

Dear Mr. Deacon:

This is our first report.

<u>**ASSIGNMENT**</u>

This commercial general liability loss was received from Columbia Insurance Company on July 11, 2012. The assignment was acknowledged on the same date.

IF 000005

EXH 2 Page 1 of 5

## DATE OF CONTACT

A letter of statutory compliance to Alaska Unfair Claim Practices Act was forwarded to the insured on July 11, 2012. Telephone contact was made with the broker and Tonka Toy General Manager Susie Walters by telephone (907) 772-4270 on July 11, 2012.

## SITE INSPECTION

A site investigation commenced on July 17, 2012 consisting of an interview with General Manager Susie Walters, interview with crane operator Mike Leonard, photographing the re-staging of the accident, inspection of site conditions, inspection of the insured vehicle, and discussion with Petersburg Harbor Master Glo Wollen.

As the claimant did not file claim with the insured as of July 17, 2012, contact attempt with the claimant was not initiated.

## INSURED

Tonka Toy LLC was formed in the State of Alaska on January 26, 2010 by Charles Davis, a managing member and 100% owner, and Tiffany Davis. The registered agent is Charles Davis, PO Box 818, Petersburg, Alaska 99833, with a physical address of 208 Haugen Drive, Petersburg, Alaska 99833. The General Manager, and our primary contact with Tonka Toy, is Susie Walters, telephone (907) 772-4270.

Tonka Toy Rentals rents power tools to the general public. It also owns and rents 1 of 2 boom trucks located in Petersburg. The rental of the boom truck includes a Tonka Toy operator. The boom truck is not available for rental to the general public without a Tonka Toy provided operator.

The insured vehicle involved in the subject accident, a 1990 Ford L8000 diesel medium duty truck, VIN: 1FDYU82A8LVA43936 bearing Alaska plate GFX330. The boom on the truck was installed by ICM Equipment Company LLC, 4899 West 2100 South, Salt Lake City, Utah 84120, phone (801) 974-0388 and manufactured by National Cranes, telephone (800) 650-2726. It appears that the boom has a reach of 54'. The load rating of the boom is variable based on boom extension and angle. The placard affixed on both sides of the truck provides load ratings at 54' boom projection at an 80 degree angle at 22,000 pounds and a 17 degree angle at 3,100 pounds. At the time of the accident, the boom was nearly fully extended at a 45 degree angle. In this position the crane has a load rating of approximately 6,000 pounds.

At the time of the subject accident the crane was operated by Michael P. Leonard, PO Box 676, Petersburg, Alaska 99833. Mr. Leonard's date of birth is June 11, 1947. His telephone number is (907) 772-3346. Mr. Leonard is newly employed with Tonka Toy as of June 17, 2012. He

IF 000006

carries a CDL Class A with Hazmat endorsement and has maintained a CDL for approximately
27 years.  He retired from the City of Petersburg as operator for Petersburg Power and Light
several years ago.  Since June he has operated Tonka Toys' boom truck an average of 3 to 4 days
a week, which included moving a 6,000 pound fuel tank and hoisting a 10,000 pound engine.  He
received a commendation from Alaska Power and Telephone for moving their 5,200 pound fuel
tank.

**CLAIMANT**

James L. Miller resides with his wife, April L. Miller, at 908 Wrangell Avenue, Petersburg,
Alaska 99833.  His date of birth is June 30, 1952.  Mr. Miller is a commercial fisherman and
current owner of the fishing vessel F/V Aleutian Spirit, a 58' fishing boat registered as a seiner,
gill netter, long liner, as well as crab harvester.  Mr. Miller also owns a 1988 aluminum 19'
diesel powered work skiff.  The USCG license on the skiff is AK4755L and is primarily used as
an assist to the Aleutian Spirit while gill netting.  The actual weight of the skiff is unknown.  The
claimant's representative believes that the weight is at least 8,000 pounds, while Mr. Leonard
believes that the weight of the skiff is approximately 15,000 pounds.  It is this skiff that was
being hauled in the water at the time of the accident.

Mr. Miller derives his sole source of income from commercial fishing.  He is president and 50%
shareholder of F/V Aleutian Spirit, Inc.  His spouse, April, is treasurer and secretary and
maintains the remaining 50% ownership.  James and April employ both of their sons fishing
commercially.

The claimant also maintains a 50' fishing boat in Ventura, California.  The specifics of this
operation are not known.

The claimant is represented by Attorney Mark Choate with Choate Law Firm LLC, 424 North
Franklin Street, Juneau, Alaska 99801, telephone (907) 586-4490, e-mail
lawyers@choatelawfirm.com .  Mr. Choate offered that James Miller is a successful commercial
fisherman he has know personally for many years.

**ACCIDENT**

Jim Miller called Tonka Toy at approximately 12:30 PM on July 5, 2012 to have the skiff hauled
in the water at the south harbor crane dock.  Arrangements were made to have the boom truck
available around the 4 o'clock hour on July 6.  Mr. Miller was to call Mike Leonard around the 4
o'clock hour on July 6 at a time that Mr. Miller was ready for the boom truck.  The engagement
was verbal.  No written contracts were engaged.  Tonka Toy simply bills its customers for actual
time of the boom truck and operator.

IF 000007

EXH 2 Page 3 of 5

Mr. Leonard lifted this same skiff from blocks onto the trailer about a week prior to the accident. Neither the skiff nor its owner was unknown to Mr. Leonard.

Mr. Miller called Mr. Leonard at the 4 o'clock hour on July 6, after which Mr. Leonard prepped the truck (meaning to start the truck and let it run for a few minutes) and took the truck for the 3 minute ride from the shop to South Harbor. Photographs 15 through 24 are a re-staging of Mr. Leonard's actions while mobilizing and operating the boom truck towards and on the south harbor crane dock. With the boom truck positioned as shown in photograph 16, a person who accompanied Mr. Miller backed up the trailer containing the skiff, resting at a point behind the boom truck and perpendicular to it so that the boom could be simply extended for the rigging of the skiff. In photograph 16 a device is on the bed of the boom truck, which is shown in greater detail in photograph 25. This is the rigging which was used to lift the skiff and is shown mounted on the boom's block in photograph 19.

While the skiff was being placed in position, Mr. Leonard prepared the boom truck by extending 4 outriggers. Once the skiff was in position, Mr. Miller climbed onto the bed of the boom truck so that he could hook the rigging to the block. Mr. Miller's placement on the truck bed was voluntary, without discussion or other interaction between Mr. Leonard and Mr. Miller. Mr. Miller placed the rigging onto the crane hook. Mr. Leonard thereafter raised the boom at an angle of 45 degrees and extended the boom to near full extension. Thereafter, the rigging was lowered and Miller's ground crew completed the rigging of the skiff to the boom. Without moving either the angle or extension of the boom, the skiff was raised from the trailer by cable retraction. Once there was sufficient clearance, Leonard swung the boom counter-clockwise to a position that the boom was nearly perpendicular to the truck, as shown in photograph 24. As the counter-clockwise travel came to a stop and Leonard was preparing to lower the skiff, the left side of the truck raised with all 5 wheels coming off the ground and outriggers rising from the ground. Both Leonard and Miller feared the boom was in process of overturning to its right side. Leonard engaged the quick release on the cable, causing the skiff to splash in the water, after which the truck re-stabilized. Prior to the truck re-stabilizing, Miller jumped off the back of the truck onto the crane dock. Leonard estimates that Miller jumped a distance of approximately 8'.

A Petersburg Harbors surveillance camera mounted at middle harbor recorded a portion of the activity prior to the accident. This camera changes positions at set intervals. The last recorded image of the video taken before the accident is shown in photos 1 and 2. There is no footage of the accident in process.

**BODILY INJURY**

After Miller jumped and landed on the crane dock, he became immobilized and was ambulated to Petersburg Medical Clinic. Radiology apparently found extensive damage to one of his legs, after which Mr. Leonard was medivaced to the University of Washington Medical Center in Seattle (Harborview). Emergency surgery was performed for multiple pylon fractures, after

IF 000008

which he was placed in ICU. According to Mr. Choate, Miller will be in post surgical care and
PT in Seattle for a period of 6 months.

### SALIENT FACTORS AS TO LIABILITY

The load rating of the boom truck extended 54' at a 45 degree angle is approximately 6,000
pounds. According to Choate, he believes the dry weight of the skiff is 8,000 pounds, while
Leonard believes it to be closer to 15,000 pounds. As the load was placed perpendicular to the
boom truck, weight shifted, overburdening the outriggers and causing the vehicle to lift on the
left side. It appears that the operator erred in failing to comply with the load rating capacity of
the crane.

### ADJUSTMENT

We have requested of Choate that he provide us with the following:

1. The names of witnesses.
2. Medicare/Medicaid Lien Information
3. Avail the claimant for an interview
4. Provide medical records with treatment plans

### PLAN OF ACTION

Await information from Choate. For reporting purposes, please diary this file 45 days.

Respectfully,

**Ferdinand J** <span style="font-size:60%">Digitally signed by Ferdinand J Lasinski<br>DN: cn=Ferdinand J Lasinski, o=Alaska<br>Adjustment Bureau, Inc.<br>email=fjlasinski@alaskajbureau.org, c=US<br>Date: 2012.10.01 09:28:52 -04'00'</span>
**Lasinski**

Ferdinand J. Lasinski, CPCU, AIC, AMIM
General Adjuster

FJL/mea

IF 000009

**COPY**
Original Received

MAR 0 6 2013

Clerk of the Trial Courts
By _____ Deputy

COPY

1
2   Mark Clayton Choate, Esq., AK #8011070
    CHOATE LAW FIRM LLC
3   424 N. Franklin Street
    Juneau, Alaska 99801
4   Telephone: (907) 586-4490
    Facsimile: (888) 866-4917
5   Email: lawyers@choatelawfirm.com
6   Attorneys for Plaintiffs
7
8           IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
9               FIRST JUDICIAL DISTRICT AT JUNEAU
10  JAMES L. MILLER and APRIL MILLER,
11                      Plaintiffs,
    vs.
12  TONKA TOY RENTALS LLC,
13                      Defendant.
14                                      Case No. 1JU-13-548 CI
15        PLAINTIFF'S COMPLAINT FOR HARMS AND LOSSES
16                  (Dated February 28, 2013)
17                              I.
18                        INTRODUCTION
19        Plaintiffs, James L. Miller and April Miller, by their attorney Mark Choate, make the
20  following Complaint for losses and harms suffered as a result of Jim Miller being needlessly
21  endangered defendant's negligence on July 6, 2012.
22                              II.
23                    VENUE AND JURISDICTION
24        1.    The statements in this Complaint arise from the negligent operation of a boom
25  truck owned by Tonka Toy Rentals LLC on July 6, 2012 in Petersburg, Alaska. As a direct
26  result of that negligent operation, James L. Miller sustained serious and permanent injury.
27
28                              1

*Miller v. Tonka Toy Rentals LLC*
COMPLAINT FOR HARMS & LOSSES DATED FEBRUARY 28, 2013
Case No. 1JU-13        CI

*Sidebar (left margin):*
CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax (888) 866-4917

EXH 3 - Page 1 of 5

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4450 Fax (888) 866-4917

2.  Plaintiffs James L. Miller and April Miller, were and are residents of Petersburg, Alaska.

3.  Defendant Tonka Toy Rentals LLC ("Tonka") is an Alaska Corporation with its principal place of business in Petersburg, Alaska.

4.  Venue is proper in the First Judicial District under ARCP Rule 3(c).

5.  The amount in controversy is in excess of $100,000.00 exclusive of interest and costs.

### FIRST CAUSE OF ACTION

#### Negligence

6.  Plaintiffs incorporate by reference each allegation contained in paragraphs 1-5 above as if set forth at length herein.

7.  On July 6, 2012, plaintiff James L. Miller (Jim Miller) the owner and captain of the FV Aleutian Spirit. Jim Miller was standing on the back of the Tonka boom truck as an extra set of eyes to assist the boom truck operator in using the boom to lift his seine skiff from the truck's flatbed and place it in the water.

8.  The boom truck was operated by a Tonka employee, Mike Leonard, who was attempting to lift the seine skiff from the boom truck's flatbed and place the skiff into the water.



2

*Miller v. Tonka Toy Rentals LLC*
COMPLAINT FOR HARMS & LOSSES DATED FEBRUARY 28, 2013
Case No. 1JU-13     CI

EXH 3 - Page 2 of 5

9.   Tonka through its employees and agents had an affirmative duty of care to not create an unreasonable risk of harm to others in the operation of its vehicle. Jim Miller is a member of the class of persons to whom that duty of care was owed.

10.   Tonka's employee was careless, negligent and inattentive in the operation of its boom arm lift such that he misjudged the weight of the skiff and extended the boom too far causing the truck supporting the boom lift to tip on its side, thereby causing the skiff to be dropped 20 feet into the water and throwing Jim Miller off the back deck of the boom truck.

11.   Tonka's negligence was a substantial factor in causing Jim Miller, to suffer physical injuries including, and not by way of limitation, complex pylon and distal fibular fractures to his left ankle.



12.   Tonka's negligence was a substantial factor in causing Jim Miller to suffer mental, physical, and emotional pain resulting in disability, all to his general damage in a sum which will be shown according to proof.

13.   Tonka's negligence was a substantial factor in causing Jim Miller to incur expenses for medical care, hospitalization, and other incidental expenses, and he will have to

3

*Miller v. Tonka Toy Rentals LLC*
COMPLAINT FOR HARMS & LOSSES DATED FEBRUARY 28, 2013
Case No. 1JU-13       CI

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax(888) 866-4917

EXH 3 - Page 3 of 5

incur additional like expenses in the future, all in amounts presently unknown to him. Jim Miller therefore asks leave of court either to amend this complaint to show the amount of his medical expenses, when ascertained, or to prove said amount at the time of trial.

14.     Tonka's negligence was a substantial factor in causing Jim Miller to be disabled and who may be disabled in the future and thereby be prevented from attending to the duties of his usual occupation. Jim Miller has lost earning capacity and may continue to lose earning capacity in the future, all in amounts presently unknown to him.

## SECOND CAUSE OF ACTION
## LOSS OF CONSORTIUM

15.     Plaintiffs incorporate herein each and every allegation contained in paragraphs 1-14 above as if set forth at length herein.

16.     At all times relevant to this action, plaintiffs Jim Miller and April Miller were and are husband and wife.

17.     Prior to the injuries as alleged herein, plaintiff's spouse was able to and did perform his duties as her husband. Subsequent to his injuries and as a legal result thereof, Plaintiff's spouse is unable to perform his duties as her husband and will in the foreseeable future continue to be unable to perform such work, services and duties. By reason thereof, Plaintiff April Miller, has been and will be deprived of the consortium of her spouse, including the performance of those duties specific to her husband all to her general damages in an amount which will be shown according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment enter against defendant, as follows:

1.  General damages in an amount that will conform to proof at time of trial;
2.  Special medical and incidental damages in an amount within the jurisdictional limits of this Court and according to proof;
3.  For loss of earnings and impaired future loss of earning capacity according to proof;
4.  For prejudgment and post-judgment interest as provided by law;
5.  For attorneys fees and costs as provided by law;
6.  Such other and further relief as this Court deems proper.

4

*Miller v. Tonka Toy Rentals LLC*
COMPLAINT FOR HARMS & LOSSES DATED FEBRUARY 28, 2013
Case No. 1JU-13      CI

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4450 Fax:(888) 866-4917

DATED: Thursday, February 28, 2013, at Juneau, Alaska.

CHOATE LAW FIRM LLC
Attorneys for Plaintiffs

By: _____
Mark Choate, 8011070

THIS MATTER IS FORMALLY
ASSIGNED TO
LOUIS J. MENENDEZ
SUPERIOR COURT JUDGE

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490 Fax (888) 366-4917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Miller v. Tonka Toy Rentals LLC*
COMPLAINT FOR HARMS & LOSSES DATED FEBRUARY 28, 2013
Case No. 1JU-13      CI

5

EXH 3 - Page 5 of 5

1  Mark C. Choate
   CHOATE LAW FIRM LLC
2  424 N. Franklin Street
   Juneau AK 99801
3  Tel:(907) 586-4490
   Fax:(888) 856-3894
4



RECEIVED

JAN 0 6 2014

File No. _____ Scanned ___
Attorney ___ Docket ___

5  Attorneys for Plaintiffs

6        IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

7              FIRST JUDICIAL DISTRICT AT JUNEAU

8  JAMES MILLER and APRIL MILLER,

9              Plaintiff,

   vs.

10 TONKA TOY RENTALS LLC,                 Case No. 1JU-13-548 CI
                                          Judge:    Menendez
11             Defendant.                 Trial:    July 22, 2014

12

13             **COVENANT SETTLEMENT AGREEMENT**

14     Plaintiffs JAMES MILLER and APRIL MILLER and Defendant TONKA TOY

15  RENTALS LLC, through their counsel of record, agree to settle all claims by JAMES MILLER

16  and APRIL MILLER in this matter against TONKA TOY RENTALS LLC on the following

17  terms and conditions:

18     1.   TONKA TOY RENTALS LLC agrees to confess judgment after action for the

19          sum of $2,500,000 plus statutory add-ons including prejudgment interest, costs

20          and attorneys fees in full settlement of all claims in this matter.

       2.   TONKA TOY RENTALS LLC will pay $1,000,000 cash towards satisfaction
21
            of that Judgment, such check to be issued and received by Plaintiffs on or before
22
            December 31, 2013.
23

24

25

26  COVENANT SETTLEMENT AGREEMENT
    *Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
27  Page 1 of 3

28

                                               EXH 4 - Page 1 of 5

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490 Fax:(888) 856-3894

Mark C. Choate
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490
Fax:(888) 856-3894

Attorneys for Plaintiffs

**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**

**FIRST JUDICIAL DISTRICT AT JUNEAU**

JAMES MILLER and APRIL MILLER,

               Plaintiff,

vs.

TONKA TOY RENTALS LLC,

               Defendant.

**ORIGINAL**

Case No. 1JU-13-548 CI
Judge:   Menendez
Trial:    July 22, 2014

**COVENANT SETTLEMENT AGREEMENT**

Plaintiffs JAMES MILLER and APRIL MILLER and Defendant TONKA TOY RENTALS LLC, through their counsel of record, agree to settle all claims by JAMES MILLER and APRIL MILLER in this matter against TONKA TOY RENTALS LLC on the following terms and conditions:

1.    TONKA TOY RENTALS LLC agrees to confess judgment after action for the sum of $2,500,000 plus statutory add-ons including prejudgment interest, costs and attorneys fees in full settlement of all claims in this matter.

2.    TONKA TOY RENTALS LLC will pay $1,000,000 cash towards satisfaction of that Judgment, such check to be issued and received by Plaintiffs on or before December 31, 2013.

COVENANT SETTLEMENT AGREEMENT
*Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
Page 1 of 3

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490 Fax:(888) 856-3894

3.    TONKA TOY RENTALS LLC assigns all claims it may have for insurance bad faith against Columbia Insurance Company, its officers, agents and attorneys. This includes any claims for punitive damages.

4.    JAMES MILLER and APRIL MILLER, in exchange of the (1) Confession of Judgment; (2) Payment of $1,000,000; and (3) Tonka Toy Rentals' assignment of all claims it may have against Columbia Insurance Company, agree and covenant a) not to execute for any reason or any amounts against Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any amount over and above the payment of $1,000,000 made by Tonka Toy Rentals LLC, the receipt and sufficiency of which is hereby acknowledged; b) to indemnify, hold harmless and defend Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any claim by Columbia Insurance Company as a result of the assignment of claims made herein; and/or c) to indemnify, hold harmless and defend Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any lien or claim arising as a result of James Miller's injuries giving rise to the present ligation.

The parties agree that time is of the essence in completing this Covenant Settlement Agreement and will complete such additional documents as necessary to carry out the intent of this Agreement.

This Covenant Settlement Agreement shall be construed under Alaska law and jurisdiction and venue for any disputes regarding it shall be in the Superior Court in Juneau, Alaska.

DATED: _12/23/13_

_____
JAMES MILLER

COVENANT SETTLEMENT AGREEMENT
*Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
Page 2 of 3

EXH 4 - Page 3 of 5

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel (907) 586-4490 Fax: (888) 856-3894

3.  TONKA TOY RENTALS LLC assigns all claims it may have for insurance bad faith against Columbia Insurance Company, its officers, agents and attorneys. This includes any claims for punitive damages.

4.  JAMES MILLER and APRIL MILLER, in exchange of the (1) Confession of Judgment; (2) Payment of $1,000,000; and (3) Tonka Toy Rentals' assignment of all claims it may have against Columbia Insurance Company, agree and covenant a) not to execute for any reason or any amounts against Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any amount over and above the payment of $1,000,000 made by Tonka Toy Rentals LLC, the receipt and sufficiency of which is hereby acknowledged; b) to indemnify, hold harmless and defend Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any claim by Columbia Insurance Company as a result of the assignment of claims made herein; and/or c) to indemnify, hold harmless and defend Tonka Toy Rentals LLC and/or Northland Casualty Company, their respective owner(s), officers, agents and attorneys, for any lien or claim arising as a result of James Miller's injuries giving rise to the present litigation.

The parties agree that time is of the essence in completing this Covenant Settlement Agreement and will complete such additional documents as necessary to carry out the intent of this Agreement.

This Covenant Settlement Agreement shall be construed under Alaska law and jurisdiction and venue for any disputes regarding it shall be in the Superior Court in Juneau, Alaska.

DATED: _12/23/13_

JAMES MILLER

COVENANT SETTLEMENT AGREEMENT
*Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
Page 2 of 3

EXH 4 - Page 4 of 5

DATED: 12/03/13

APRIL MILLER

DATED: 12-26-13

TONKA TOY RENTALS LLC

APPROVED AS TO FORM:

Mark Choate,
Attorney for Plaintiffs

Lanning Trueb
Attorney for Defendant

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490 Fax:(888) 856-3894

COVENANT SETTLEMENT AGREEMENT
*Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
Page 3 of 3

EXH 4 - Page 5 of 5

Mark C. Choate
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490
Fax:(888) 856-3894

Attorneys for Plaintiffs

RECEIVED
JAN 0 6 2014
File No. _____ Scanned ___
Attorney ___ Docket ___

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT JUNEAU

JAMES MILLER and APRIL MILLER,

            Plaintiff,

vs.

TONKA TOY RENTALS LLC,

            Defendant.

COPY

Case No. 1JU-13-548 CI
Judge:   Menendez
Trial:   July 22, 2014

## CONFESSION OF JUDGMENT AFTER ACTION

Defendant TONKA TOY RENTALS LLC, pursuant to ARCP 57(b) confesses judgment to Plaintiffs JAMES MILLER and APRIL MILLER in the amount of $2,500,000 plus prejudgment interest, costs and attorneys fees.

DATED: 12-26-13

_____
TONKA TOY RENTALS LLC

APPROVED AS TO FORM:

_____
Mark Choate
Attorney for Plaintiffs

_____
Lanning Trueb
Attorney for Defendant

CONFESSION OF JUDGMENT AFTER ACTION
*Miller, James vs. Tonka Toy Rentals, LLC* – Case No. 1JU-13-548 CI
Page 1 of 1

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau AK 99801
Tel:(907) 586-4490 Fax:(888) 856-3894